**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| | Civil Action No.: _____ |
| **Coulter Ventures, LLC, d/b/a Rogue Fitness** | Judge: _____ |
|       Plaintiff, | Magistrate Judge: _____ |
|    v. | **COMPLAINT FOR MONETARY AND INJUNCTIVE RELIEF FOR:** |
| **Titan Manufacturing and Distributing, Inc., d/b/a Titan Fitness,** | **TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a); TRADE DRESS INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a); UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a); TRADEMARK INFRINGEMENT IN VIOLATION OF OHIO REV. CODE § 1329.65;** |
|       Defendant. | **DECEPTIVE TRADE PRACTICES IN VIOLATION OF OHIO REV. CODE § 4165.02; COMMON LAW TRADEMARK INFRINGEMENT; COMMON LAW TRADE DRESS INFRINGEMENT; COMMON LAW TRADEMARK DILUTION; AND COMMON LAW UNFAIR COMPETITION.** |
| | **Jury Trial Demanded** |

## COMPLAINT

Plaintiff, Coulter Ventures, LLC, d/b/a Rogue Fitness ("Rogue"), for its complaint against Titan Manufacturing and Distributing, Inc., d/b/a Titan Fitness ("Titan"), alleges as follows:

## THE PARTIES

1.      Rogue is a company organized and existing under the laws of the State of Ohio with a principal place of business at 545 East Fifth Avenue, Columbus, Ohio 43201.

2.      On information and belief, Titan Manufacturing and Distributing, Inc., d/b/a Titan Fitness, d/b/a Titan Distributors, Inc., d/b/a Titan Great Outdoors, d/b/a Titan Ramps, d/b/a Titan Attachments, is a corporation organized and existing under the laws of the State of Tennessee with a principal place of business at 141 Eastley Street, Suite 113, Collierville, Tennessee 38017. Titan may be served at its Registered Agent, Jeffery Alan Hill, at 141 Eastley Street, Suite 113, Collierville, Tennessee 38017-2777. On information and belief, Titan offers, sells, and distributes its products to customers and potential customers across the United States through at least its various websites, as described below.

## JURISDICTION AND VENUE

3.      This is a complaint for monetary remedies and injunctive relief based on Titan's use of Rogue's intellectual property in connection with Titan's promotion and sales of strength and fitness products. This complaint includes multiple grounds for relief including trademark infringement, trade dress infringement, trademark dilution, unfair competition and false designation of origin, and deceptive trade practices. This complaint arises under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq*. ("the Lanham Act"); the Ohio Revised Code §§ 1329.65 and 4165.02; Federal common law; and state common law, including the law of Ohio.

4.      This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a).

5.      This Court has personal jurisdiction over Titan because, *inter alia*, Titan is purposefully and intentionally availing itself of the privileges of doing business in the State of

13526691v1

Ohio, including in this District. For example, and as discussed in more detail below, on information and belief: (i) Titan has advertised, marketed, promoted, offered for sale, sold, distributed, manufactured, and/or imported, and continues to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import, infringing products to customers and/or potential customers, including in this District, at least through Titan's websites, for example, https://www.titan.fitness, through which local users, including users from Ohio and this District, transact business, form contracts, and/or exchange information with Titan; (ii) Titan's tortious acts giving rise to this lawsuit and the resulting harm to Rogue have occurred and are occurring in Ohio, including in this District; (iii) Titan acted with knowledge that its unauthorized use of Rogue's rights would cause harm to Rogue in Ohio and in this District; (iv) Titan's customers and/or potential customers reside in Ohio, including in this District; and (v) Titan has advertised, marketed, promoted, offered for sale, sold, distributed, manufactured, and/or imported, and continues to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import, products to customers and/or potential customers, including in this District, at least through Titan's other websites, including, for example, https://www.titandistributorsinc.com, https://titangreatoutdoors.com, https://titanramps.com, https://palletforks.com, https://www.instagram.com/titangreatoutdoors, and https://www.facebook.com/titangreatoutdoors, through which users, including users from Ohio and this District, transact business, form contracts, and/or exchange information with Titan.

6.      Venue is proper in this District pursuant to at least 28 U.S.C. § 1391(a)-(d), at least because Titan's infringing activity occurs in Ohio, including in this District, and confusion resulting from Titan's infringing activity is likely to occur in at least Ohio, including in this District.

13526691v1

## General Allegations – Introduction

7.     On information and belief, Titan Manufacturing and Distributing, Inc. is a diversified business that trades in a variety of products and channels of commerce. On information and belief, only Titan Fitness, a d/b/a of Titan Manufacturing and Distributing, Inc., promotes and sells strength and fitness equipment. Titan promotes its products to the same types of consumers as those to whom Rogue markets its strength and fitness equipment. The products Titan sells are the same types of products Rogue sells. The channels of trade through which Titan markets and sells its equipment are the same as those used by Rogue. The primary difference is that Rogue designs and makes the highest quality equipment, primarily from its local facilities in Columbus, Ohio, while Titan imports low-quality imitations from abroad.

8.     Rogue was first. On information and belief, Rogue started making and selling high-quality strength and fitness equipment more than seven years before Titan started doing business. Titan has relentlessly mimicked, imitated, and copied Rogue's products and marketing. When Rogue introduces a new product, Titan soon-after introduces a similar product. When Rogue adopts a trademark, Titan soon-after starts promoting and selling products in connection with the same or similar marks. Two recent examples highlight Titan's conduct and intent to copy Rogue.

9.     First, Titan recently released its "DBENCH" product with owner's manuals that included a Rogue marketing image taken by Rogue of an athlete wearing Rogue apparel, using Rogue equipment, and surrounded by Rogue-branded products. In this instance, consumers recognized Titan's "embarrassing" use of Rogue images in a Titan manual, as reflected in the social media post reproduced below.

4

| Illustration 1: Titan's Use of Rogue Imagery (left) in Titan Manual (excerpted right) | |
|---|---|
|  | |
| Rogue marketing image (https://www.roguefitness.com/rogue-ab-3-adjustable-bench) | Excerpt of social media post showing Titan's use of Rogue image in Titan DBENCH Owner's Manual |

10. Second, leading up to Thanksgiving 2017, Rogue launched a "Black Friday" promotion preview on its website that depicted flickering white neon box letters on a black background (https://www.instagram.com/p/BbsrPWmlIen/?utm_source=ig_share_sheet&igshid=14y0d0ujhy 2c4). Rogue relaunched its "Black Friday" website campaign in 2018 (https://www.instagram.com/p/BqVnFvylodF/). Titan also launched a 2018 "Black Friday" promotion on its website, including flickering white neon box letters on a black background similar to Rogue's imagery (https://www.instagram.com/p/BqIIdyvgPcs/).

11. Tellingly, Titan Fitness is the only d/b/a of Titan Manufacturing and Distributing Inc. whose marketing closely follows Rogue's marketing.

5

12.     Rogue is filing this complaint to break the chain of Titan's ever-escalating efforts to unfairly compete with Rogue, to confuse consumers, to freeride on Rogue's intellectual property, and to diminish the value of Rogue's valuable trademarks. This complaint asserts Rogue's rights in two different trademarks that Titan unfairly copied, namely:

- Rogue's iconic Rogue Fitness Logo:

; and

- The unique look and feel of Rogue's Website Trade Dress.

13.     Rogue spent many years and substantial resources creating and nurturing commercial goodwill with consumers in its asserted trademarks. Titan, in contrast, has unfairly adopted confusingly similar and/or diluting imitations of Rogue's source identifiers for the purpose of offering lower-quality, foreign-manufactured imitations of Rogue's products.

14.     On information and belief, Titan's conduct fits a pattern of business practices that has forced other intellectual property owners to seek legal recourse against Titan, including at least in Case No. 2:17-cv-02738-JPM-tmp (W.D. Tenn.), ECF 1 (complaint against Titan for copyright infringement, violations of 15 U.S.C. 1125(a), and deceptive business practices, based on Titan's willful and knowing use of copyrighted images in Titan advertisements allegedly portraying Titan products, despite prior warnings from plaintiff); Case No. 2:17-cv-01206-JNP-PMW (D. Utah), ECF 2 (complaint against Titan for trade dress infringement, unfair competition, and deceptive trade practices, based on Titan's willful copying of product trade dresses and use of those trade dresses in low-quality products that are priced below the legitimate products being copied by Titan); Case No. 17-cv-00157-PJS-TNL (D. Minn.), ECF 1 (complaint against Titan for trade name infringement, trademark infringement, unjust enrichment, unfair competition, false designation of origin, and deceptive trade practices, based on Titan's copying

6

of plaintiff's products and then selling those products with the plaintiff's unique product numbers and/or under the plaintiff's name, and further copying the plaintiff's owner's manuals, including images and diagrams contained within, where the use of the plaintiff's product numbers, name, and/or owner's manuals was willful); and Case No. 2:18-cv-01171 (E.D. Wis.), ECF 1 (complaint against Titan for unfair competition, violations of the Wisconsin Consumer Protection Acts, and patent infringement, based on Titan's copying of plaintiff's products and selling Chinese manufactured versions with substandard design/workmanship, and further alleging such acts were willful, "careful and considered," and intentional).

15.     Because Titan touts that it has now become one of the top 500 Internet sellers with multiple distribution centers across the country (which, on information and belief, includes Titan's other, non-fitness d/b/a businesses), and because there is every indication that Titan's unfair acts will continue to grow, Rogue has been forced to seek relief in this Court, as more fully described below.

### General Allegations – Rogue's Intellectual Property

16.     For over a decade, Rogue has developed, manufactured, and sold high-quality strength and fitness products.

17.     Bill Henniger first formed Rogue in Columbus, Ohio in 2006, as a retail website for the sale of strength and fitness equipment and a CrossFit® affiliate. Mr. Henniger is an Ohio native with a degree in industrial engineering from Ohio University. Following a term of military service in the Ohio Air National Guard, including a few years of active duty service, Mr. Henniger spent over seven years building his knowledge and experience in metal-based manufacturing. He formed Rogue while earning his MBA through night school at the University of Michigan. Soon after the launch of the website Mr. Henniger and a colleague of his from the

13526691v1

military opened a gym in Columbus, Ohio, cashing in his retirement account to buy the necessary equipment and setting up the facility by hand.

18.     Mr. Henniger and the Rogue team quickly realized that the marketplace lacked a single source of high-quality strength and fitness equipment necessary to operate a gym. Rogue's customers also noted a lack of high-quality equipment and services for, *inter alia*, CrossFit® fitness regimens and other high intensity strength and fitness exercises. Rogue, relying on Mr. Henniger's knowledge and experience with high-quality metal manufacturing and the expertise provided by the skilled craftsmen that joined his team, began manufacturing and warehousing its own strength and fitness equipment. To provide the highest quality equipment possible, Rogue manufactures a substantial amount of its branded products in Columbus, Ohio.

19.     In-house, domestic manufacturing allows Rogue full control over the quality of materials, engineering processes, product design, and employee qualifications, in stark contrast to previously available products sourced internationally. Rogue's America-made approach results in dramatic advantages in product quality, durability, and value for Rogue's customers, which has driven the growth of Rogue's reputation and goodwill in the marketplace and made Rogue known for unparalleled product quality and services.

20.     Rogue also works to improve the local Columbus-area community. Rogue now employs hundreds of people in the Columbus area and works with many other local businesses for services such as shipping to further ensure its business efforts benefit Ohioans and residents of the Columbus area in particular.

21.     Rogue's efforts to create a new market segment for the highest quality strength and fitness products were an immediate success. In 2010, Rogue opened a five thousand square foot facility in Columbus to increase its capacity to make weightlifting, CrossFit®, and other

8

fitness equipment. Rogue's Columbus facilities grew to a one hundred seventy thousand square foot manufacturing center in 2012. Today, Rogue also operates a six hundred thousand square foot facility in Columbus.

22.     Rogue's strength and fitness products and services were well received with consumers in markets across the United States, including in Ohio. To support the growth of its brand, Rogue has advertised Rogue-branded products and services throughout the country, sponsored strength and fitness events throughout the country, and has enjoyed substantial, laudatory, unsolicited publicity for its products and services throughout the country.

23.     As representative examples of Rogue's success, exposure, and growth: (1) Rogue builds and supplies equipment for prominent events such as USA Powerlifting events, The Arnold Sports Festival®, The World's Strongest Man competitions, and USA Weightlifting events; (2) Rogue partners with top athletes around the world, including sponsorships of Hafþór Björnsson, Rich Froning, Katrin Davidsdottir, Tia-Clair Toomey, Graham Holmberg, Josh Bridges, Jason Khalipa, and Mat Fraser, among dozens of others; (3) Rogue has been the exclusive equipment supplier to the CrossFit® games for many years; and (4) Rogue is the primary supplier of equipment used for CrossFit® affiliate gyms.

24.     In addition to Rogue's own, substantial online marketing and social media presence, many of Rogue's sponsored athletes have hundreds of thousands of followers on social media, and some exceed 1 million followers (*e.g.* Hafþór Björnsson, Rich Froning, Katrin Davidsdottir, and Mat Fraser currently have more than 1.5 million, 1.1 million, 1.3 million, and 1.3 million followers on Instagram®, respectively, in addition to hundreds of thousands of followers on other platforms such as Twitter® and/or Facebook®). Rogue-branded products and services gain public exposure to these many millions of followers of Rogue-sponsored athletes

through social media posts, and through Rogue's own substantial promotional and advertising materials.

25.     All told, Rogue invested substantial time, skill, and resources over the years in creating, cultivating, and maintaining a reputation for the highest quality strength and fitness products and services. To protect these investments and the invaluable goodwill Rogue has built up through years of effort in the marketplace, including in Ohio, Rogue has acquired various intellectual property rights. To that end, for years, Rogue has used a number of trademarks (including trade dresses) throughout the United States and Ohio in connection with the development, manufacture, and sale of high-quality strength and fitness products. Rogue's rights relevant to this action are described below.

## The Rogue Fitness Logo

26.     In 2008, the United States Patent & Trademark Office granted Rogue's application to register the words ROGUE FITNESS as trademarks (Federal Trademark Registrations Nos. 4,055,351 and 3,501,073, which are incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065). The registration process confirmed that the "Rogue Fitness" wordmark is inherently distinctive, as used and registered by Rogue.

27.     Rogue created and began using a stylized logo ("the Rogue Fitness Logo") throughout the United States and Ohio in connection with advertising and promoting Rogue's strength and fitness goods and services. Rogue has continuously used the Rogue Fitness Logo since at least 2007. The Rogue Fitness Logo depicts Rogue's ROGUE FITNESS trademark using a unique and arbitrary, stylized font, and most commonly employs distinctive red, white, and black colors.

28.     Example images of the Rogue Fitness Logo are shown below in Illustration 2, with the most commonly used version of the logo shown first.



29.     Rogue specially selected the distinctive shade of red ("Rogue Red") that it often uses in the Rogue Fitness Logo.

30.     Rogue intentionally designed its Rogue Fitness Logo to serve as a unique mark in the strength and fitness industry, and one that consumers could readily associate with Rogue.

31.     The Rogue Fitness Logo is an arbitrary mark and is therefore inherently distinctive.

32.     As a result of Rogue's extensive and continuous use of the Rogue Fitness Logo, consumers have come to associate the Rogue Fitness Logo as a source identifier of high-quality Rogue products, and Rogue owns trademark rights in the Rogue Fitness Logo, including the following Ohio state trademark registrations:

    i.     Ohio Trademark Registration No. 4253862 ("the '862 Registration") for "ROGUE FITNESS" in stylized lettering with "ROGUE" in red and "FITNESS" in white on a black background, for "[o]nline wholesale and retail store services featuring sporting, weight-lifting, strength, and conditioning exercise equipment";

13526691v1

ii.    Ohio Trademark Registration No. 4253863 ("the '863 Registration") for "ROGUE FITNESS" in stylized lettering with "ROGUE" in red and "FITNESS" in white on a black background, for "[w]eightlifting sleds, weight lifting racks, weight lifting benches, weight lifting collars, weightlifting bars, barbells, dumbbells, pull-up exercise bars, weight lifting plates, storage racks for weight lifting bars, storage racks for weight lifting plates, gymnastic grips, straps for gymnastic rings, kettlebells, medicine balls, climbing ropes, jump ropes, conditioning ropes, exercise ropes, stationary exercise bicycles, weight lifting bumpers, gymnastic rings, plyometric boxes, abdominal mats, wrist wraps for joint support during weightlifting, weight lifting gloves, workout gloves, weight lifting belts, weight lifting chalk bowls and stands, weighted vests and vest plates, wall balls and wall ball targets, parallettes, peg boards, jump rope and weight lifting belt hangers and racks";

iii.    Ohio Trademark Registration No. 4253864 ("the '864 Registration") for "ROGUE FITNESS" in stylized lettering with "ROGUE" in red and "FITNESS" in white on a black background, for "weight lifting training services; personal trainer services";

iv.    Ohio Trademark Registration No. 4253865 ("the '865 Registration") for "ROGUE FITNESS" in stylized lettering (without claim to a particular set of colors), for "weight lifting training services; personal trainer services;

v.    Ohio Trademark Registration No. 4253866 ("the '866 Registration") for "ROGUE FITNESS" in stylized lettering (without claim to a particular set

13526691v1

of colors), for "[o]nline wholesale and retail store services featuring sporting, weight-lifting, strength, and conditioning exercise equipment"; and

vi.    Ohio Trademark Registration No. 4251894 ("the '894 Registration") for "ROGUE FITNESS" in stylized lettering (without claim to a particular set of colors), for "[w]eightlifting sleds, weight lifting racks, weight lifting benches, weight lifting collars, weightlifting bars, barbells, dumbbells, pull-up exercise bars, weight lifting plates, storage racks for weight lifting bars, storage racks for weight lifting plates, gymnastic grips, straps for gymnastic rings, kettlebells, medicine balls, climbing ropes, jump ropes, conditioning ropes, exercise ropes, stationary exercise bicycles, weight lifting bumpers, gymnastic rings, plyometric boxes, abdominal mats, wrist wraps for joint support during weightlifting, weight lifting gloves, workout gloves, weight lifting belts, weight lifting chalk bowls and stands, weighted vests and vest plates, wall balls and wall ball targets, parallettes, peg boards, jump rope and weight lifting belt hangers and racks."

33.    Copies of the trademark registrations are attached as Exhibit A.

34.    As a result of, *inter alia*, Rogue's exclusive, continuous, and substantial use of the Rogue Fitness Logo in commerce, Rogue owns common law rights in the Rogue Fitness Logo in connection with, *inter alia*, exercise, strength, weight-lifting and fitness equipment, apparel, retail and wholesale services, athletic and sporting services, and training services.

35.    For example, Rogue has made substantial use and promotion of the Rogue Fitness Logo. As one representative example, the Rogue Fitness Logo is and has been visible throughout Rogue's website, whose various pages experienced hundreds of millions of unique page views.

As another example, the Rogue Fitness Logo appears in social media, including promotional and training videos made by Rogue (such as Rogue's videos available at https://www.youtube.com/watch?v=KjGvwQl8tis, which has been viewed more than three million times, and https://www.youtube.com/watch?v=rhF0cbRjxRo, which has been watched by more than one and a half million users). Based on an estimated number of social media video views alone, the Rogue Fitness Logo has made tens of millions of consumer impressions, if not more.

36. In addition, Rogue has used the Rogue Fitness Logo on purchase materials sent with Rogue products shipped to consumers and directly on Rogue products. All told, Rogue has sold significant numbers of products in connection with the Rogue Fitness Logo.

37. The Rogue Fitness Logo has become famous and has acquired valuable goodwill in the marketplace because consumers have come to uniquely associate the Rogue Fitness Logo as a source identifier of Rogue. The Rogue Fitness Logo is especially recognized in Ohio, and the Columbus area, as a famous, strongly recognized, and well-known source identifier of Rogue, and is likewise strongly recognized by individuals in relevant market segments, *e.g.* by individuals who purchase and/or are likely to purchase strength and fitness equipment, as a famous and well-known source identifier of Rogue.

## The Rogue Website Trade Dress

38. Rogue has promoted and sold its products and services through its distinctive website located at www.roguefitness.com ("the Rogue Website") for many years. Example images of the Rogue Website are provided in Illustration 3 below.

**Illustration 3:  Example Image of Rogue's Website**



**Illustration 3: Example Image of Rogue's Website**



39.  Rogue invested substantial time, skill, and resources creating and developing its website. The Rogue Website contains various elements that—when viewed together—contribute to an overall look, feel, visual design, interface design, and appearance that is distinctive to Rogue, and has come to distinguish Rogue's products and services from those of others, both through its inherent distinctiveness and the secondary meaning and recognition that has resulted from significant traffic on and sales made through the Rogue Website.

40.  As a result of Rogue's efforts, Rogue owns trade dress rights in its website ("the Rogue Website Trade Dress"), including the combination of the following elements: (1) a top level banner with a black background; (2) an identification logo in the top banner to the left of a contrasting search bar; (3) two bars of adjacent text links above and below the top banner using a similar color and a contrasting color, one providing product category links and one providing user and shopping links; (4) display of a box of text relevant to a product when a user is

16

reviewing products and holds the mouse/cursor over that product, where the exterior of the box and text is grey and using a white background; (5) a centered slideshow of images on the main page; (6) a bar of links on the main page with text that, when a user places the mouse icon over the text, become highlighted in Rogue Red color; (7) use of the font of the Rogue Fitness Logo on the website; and (8) use of black, red, and white color consistent with the Rogue Fitness Logo.

41.     The Rogue Website Trade Dress is non-functional because its elements can be substituted, removed, changed, and placed in other arrangements relative to one another, while resulting in a webpage that is different in overall look and feel from the Rogue Website. Indeed, competitors have a plethora of colors, fonts, layouts, and features to choose from that are different from the Rogue Website Trade Dress.

42.     The Rogue Website Trade Dress has acquired secondary meaning as a result of Rogue's consistent, continuous, and substantial use of its combined elements that has allowed consumers to associate the Rogue Website Trade Dress with Rogue as the source for high-quality Rogue-branded products and services. At least hundreds of millions of customers and potential customers have viewed the Rogue Website over the years, and Rogue has sold significant numbers of Rogue products through its website. As a result, the Rogue Website Trade Dress has acquired valuable goodwill and substantial secondary meaning in the marketplace, as consumers have come to uniquely associate Rogue's trade dress as a source identifier of Rogue.

### General Allegations – Titan's Willful and Unlawful Activities

43.     Without Rogue's authorization, Titan purposefully advertised, promoted, offered to sell, sold, and/or distributed products in violation of Rogue's rights, including through the use

of trademarks and trade dresses that are confusingly similar to, and likely to dilute the goodwill of, Rogue's trademarks and trade dresses.

<strong><u>Titan's Violations of the Rogue Fitness Logo</u></strong>

44.    Titan has purposefully advertised, promoted, offered for sale, sold, and/or distributed, and continues to advertise, promote, offer for sale, sell, and/or distribute inferior-quality products using confusingly similar imitations of Rogue's Rogue Fitness Logo, the "Titan Fitness Logos." The following Illustration compares Rogue's Rogue Fitness Logo on the left with infringing Titan Fitness Logos on the right.

**Illustration 4: Rogue Fitness Logo (left), Infringing Titan Fitness Logos (right)**



45.    As shown above, the Rogue Fitness Logo and Titan Fitness Logos are substantially similar in overall appearance. Titan uses its Titan Fitness Logos in the same manner Rogue uses its Rogue Fitness Logo, in connection with products similar to those sold by Rogue,

through similar marketing channels, and to the same types of consumers as those who purchase or might purchase Rogue goods or services.

46.     Moreover, Titan uses its Titan Fitness Logos in connection with a website search feature that directs users to Titan products when searching for Rogue-branded products. For example, Rogue sells equipment under its "Monster" brand. Although Titan does not sell any Rogue Monster products, Titan's website returns "Related Searches" for Titan products when the site is searched for "monster." When users click on these links they are directed to Titan products. For example, if the user clicks "Monster dumbbell," the Titan website pulls up all of Titan's dumbbell products. Moreover, on information and belief, Titan's website identifies these "related searches" because users are in fact entering those search terms using Rogue product names, evidencing actual confusion between the companies and/or their products. The Illustration below shows a screen clipping of Titan's use of the infringing Titan Fitness Logo in connection with its misleading search results for Rogue Monster branded products.

**Illustration 5:  Excerpt of Titan Fitness Website Search for Rogue "Monster" Products**



47.     As shown above, Titan appropriated the color combinations of the Rogue Fitness Logo, and copied the font used by Rogue. For example, Titan chose the Rogue Fitness Logo colors, despite many other options, and copied the highly stylized "FITNESS" in the Rogue Fitness Logo.

48.     Titan's copying of Rogue's Rogue Fitness Logo evidences the distinctiveness, strength, and fame of the Rogue Fitness Logo, because there is no other reason to use the features of the Rogue Fitness Logo except to capitalize on the strength and marketplace recognition Rogue created in the mark.

49.     Titan's ability to use other logo features and other color combinations, and intentional choice not to, is confirmed by the logos Titan Manufacturing and Distributing, Inc. uses for its other businesses. For example, shown below are the logos for three distinct Titan Manufacturing and Distributing, Inc. business lines. As shown below, Titan's intentional copying of the Rogue Fitness Logo is evidenced by its use of distinctly different logos for its other businesses (shown left and right below, infringing Titan Fitness Logo shown in the center).

| Illustration 6:  Comparison of Titan Logos in Other Industries Using Alternative Features |
| --- |



50.     Titan's use of the Titan Fitness Logos is likely to cause confusion with regard to Titan and/or its products, on one hand, and Rogue and/or its products, on the other. The Titan Fitness Logos are likely to cause confusion based on initial interest, point of sale, and post-sale confusion.

13526691v1

51.     Titan's use of the Titan Fitness Logos is also likely to dilute the Rogue Fitness Logo through loss of distinctiveness, effectiveness, and value, for example by unwanted associations in the marketplace between the Titan Fitness Logos and the Rogue Fitness Logo.

**Titan's Violations of the Rogue Website Trade Dress**

52.     Without Rogue's authorization, Titan has appropriated the overall look and feel of the Rogue Website Trade Dress.

53.     Upon information and belief, Titan was aware of the goodwill in Rogue's distinctive website before it copied the overall look and feel of the Rogue Website Trade Dress.

54.     Through Titan's titan.fitness website located at https://www.titan.fitness ("the Titan website"), Titan has promoted and sold strength and fitness equipment using a website design that, when viewed as a whole, has an overall look and feel that is confusingly similar to the Rogue Website Trade Dress.

55.     Titan further directs its website promotions to the same types of consumers as those to whom Rogue markets and sells similar types of strength and fitness equipment.

56.     The following Illustrations compare the Rogue Website Trade Dress to the Titan website. For example, the top level banner of the Rogue Website landing page (*e.g.*, a main page) is shown below, juxtaposed above the landing page and top level banner of the Titan website.

**Illustration 7: Comparison of Top Level Features on Rogue and Titan Websites**



Rogue Landing Page Banner With Black Background, Logo to Left of a Search Bar, and Two Bars of Adjacent Text Links Above and Below the Main Banner Using a Similar Color and a Contrasting Color, One Providing Product Catagories and One Providing User Links

Titan Landing Page Banner With Black Background, Logo to Left of a Search Bar, and Two Bars of Adjacent Text Links Above and Below the Main Banner Using a Similar Color and a Contrasting Color, One Providing Product Catagories and One Providing User Links

57.     On Rogue's website, when a user reviews products and holds the mouse/cursor over a product, such as when presented in a product array or in search results, the site displays a box of text relevant to that product, where the exterior of the box and text is grey with a white background. On Titan's website, when a user reviews products and holds the mouse/cursor over a product, such as when presented in a product array or in search results, the site displays a box of text relevant to that product, where the exterior of the box and text is grey with a white background.

58.     Rogue's website has a landing page (*e.g.* main page) that shows a centered slideshow of images. Titan's website has a landing page that shows a centered slideshow of images.

13526691v1

59.     Rogue's website has a landing page with a bar of text links that, when a user places the mouse icon over the text, become highlighted in Rogue Red color. Titan's website has a landing page with a bar of text links that, when a user placed the mouse icon over the text, become highlighted in a red color the same as or similar to Rogue Red.

60.     Rogue's website also uses a distinct text font, *i.e.* the font of the Rogue Fitness Logo, in various locations throughout the website. Titan uses the same font, as described and shown above, including in the banner images shown above where it includes the infringing Titan Fitness Logo on the Titan website.

61.     Rogue's website also uses distinct colors, *i.e.* the use of black, red, and white, in various places throughout the website, and Titan uses the same colors as described and shown above.

62.     Titan's ability to use other website features, and intentional choice not to, is evidenced by Titan Manufacturing and Distributing, Inc.'s use of websites for its other businesses that do not promote or sell strength and fitness equipment and that have designs that are different from the Rogue Website Trade Dress. Titan Manufacturing and Distributing, Inc.'s use of different website designs is shown at least at: www.titanramps.com, www.palletforks.com, and www.titangreatoutdoors.com, which all, on information and belief, are websites owned and operated by Titan. Despite having and using alternative designs, Titan willfully copies the Rogue Website Trade Dress in connection with strength and fitness products.

63.     On information and belief, Titan's use of the Rogue Website Trade Dress in connection with the sale and offering for sale of the same types of goods sold by Rogue, to the same types of consumers, is designed to divert, is likely to divert, and has diverted, consumers from the Rogue Website. Titan's intentional use of the Rogue Website Trade Dress is further

23

likely to cause confusion, to cause mistake, and to deceive customers and prospective customers as to the origin or sponsorship of Titan's goods or services, and to cause them to believe that Titan's goods are those of Rogue, or are sponsored, licensed, authorized, or approved by Rogue, all to the detriment of Rogue and the public.

## COUNT I:  Trademark Infringement in Violation of 15 U.S.C. § 1125(a)

64.     Rogue realleges and incorporates the allegations set forth in paragraphs 1 through 63 as though fully set forth herein.

65.     Based on the activities described above, including, for example, Titan's use of the Rogue Fitness Logo and/or colorable imitations thereof, Titan violates § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Titan's use of Rogue's trademark and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Titan with Rogue as to the origin, sponsorship, and/or approval of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with Rogue, or that the parties are otherwise connected, associated, and/or affiliated.

66.     Rogue has extensively and continuously promoted and used its trademark in the United States and Ohio. Through that extensive and continuous use, Rogue's trademark has become a well-known indicator of the origin and quality of Rogue's products and services. Rogue's trademark has also acquired substantial secondary meaning in the marketplace, including in and across Ohio, in geographic areas of Ohio such as the Columbus area, and to relevant groups of consumers and potential customers, *e.g.* individuals who purchase and/or are likely to purchase strength and fitness equipment. Rogue's trademark acquired secondary meaning before Titan started infringing Rogue's trademark.

24

13526691v1

67. Titan's use of Rogue's trademark and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Rogue for which Rogue has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Rogue's trademark, Rogue's products, and Rogue.

68. On information and belief, Titan's use of Rogue's trademark and/or colorable imitations thereof has been intentional, willful, and malicious. Titan's bad faith is evidenced at least by Titan's ongoing and expanding campaign to copy Rogue, confuse consumers, and erode Rogue's valuable trademark.

69. Rogue is entitled to injunctive relief, and Rogue is entitled to recover at least Titan's profits, costs, and reasonable attorneys' fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

## COUNT II: Trade Dress Infringement Under 15 U.S.C. § 1125(a)

70. Rogue realleges and incorporates the allegations set forth in paragraphs 1 through 69 as though fully set forth therein.

71. Based on the activities described above, including, for example, Titan's use of the Rogue Website Trade Dress and/or colorable imitations thereof, Titan violates § 43(a) of the Lanham Act, § 1125(a). Titan's use of Rogue's trade dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Titan with Rogue as to the origin, sponsorship, and/or approval of the infringing products, at least by creating the false and misleading impression that Titan's products are manufactured by, authorized by, or otherwise associated with Rogue, or that the parties are otherwise connected, associated, and/or affiliated.

13526691v1

72.    Rogue's trade dress is distinctive, and there exist many alternatives available to competitors, such that there are no cost or quality advantages to using aspects or all of the Rogue trade dress. Rogue has extensively and continuously promoted and used its trade dress in the United States and Ohio. Through that extensive and continuous use, Rogue's trade dress has become a well-known indicator of the origin and quality of Rogue's products and services. Rogue's trade dress has also acquired substantial secondary meaning in the marketplace, including in and across Ohio, in geographic areas of Ohio such as the Columbus area, and to relevant groups of consumers and potential customers, *e.g.* individuals who purchase and/or are likely to purchase strength and fitness equipment. Rogue's trade dress acquired secondary meaning before Titan started infringing Rogue's trade dress.

73.    Titan's use of Rogue's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Rogue for which Rogue has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Rogue's trade dress, Rogue's products, and Rogue.

74.    On information and belief, Titan's use of Rogue's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Titan's bad faith is evidenced by at least Titan's ongoing and expanding campaign to copy Rogue, confuse consumers, and erode Rogue's valuable trade dresses.

75.    Rogue is entitled to injunctive relief, and Rogue is entitled to recover at least Titan's profits, costs, and reasonable attorneys' fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

13526691v1

## COUNT III: Unfair Competition and False Designation of Origin in Violation of 15 U.S.C. § 1125(a)

76.     Rogue realleges and incorporates the allegations set forth in paragraphs 1 through 75 as though fully set forth therein.

77.     Titan's advertisements, promotions, offers to sell, sales, and/or distribution of products using marks, terms, or designs that infringe the Rogue Fitness Logo and the Rogue Website Trade Dress, and/or other infringing uses, in direct competition with Rogue, violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and constitute unfair competition and false designation of origin, at least because Titan has obtained an unfair advantage as compared to Rogue through Titan's use of the Rogue Fitness Logo and the Rogue Website Trade Dress, and/or colorable imitations thereof. Such uses are likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of products and services bearing the infringing marks, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with Rogue, or that the parties are otherwise connected, associated, and/or affiliated.

78.     Rogue's trademark and trade dress are entitled to protection under the Lanham Act. Rogue's trademark has both inherent and acquired distinctiveness, and Rogue's trade dress includes unique, distinctive, and non-functional subject matter that consumers have come to associate with Rogue. Rogue has extensively and continuously promoted and used its trademark and trade dress in the United States and in Ohio. Through extensive and continuous use, Rogue's trademark and trade dress have become well-known indicators of the origin and quality of Rogue's products and services. Rogue's trademark and trade dress have also acquired substantial secondary meaning in the marketplace, including in and across Ohio, in geographic areas of Ohio such as the Columbus area, and to relevant groups of consumers and potential customers, *e.g.*

27

individuals who purchase and/or are likely to purchase strength and fitness equipment. Moreover, Rogue's trademark and trade dress acquired secondary meaning before Titan started infringing Rogue's trademark and trade dress.

79.     Titan's use of Rogue's trademark, Rogue's trade dress, and/or colorable imitations thereof has been intentional, willful, and malicious. Titan's bad faith is evidenced by at least Titan's ongoing and expanding campaign to copy Rogue, confuse consumers, and erode Rogue's valuable trademark and trade dress rights.

80.     Rogue is entitled to injunctive relief, and Rogue is also entitled to recover at least Titan's profits, costs, and reasonable attorneys' fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

## COUNT IV:  Trademark Infringement in Violation of Ohio Rev. Code § 1329.65

81.     Rogue realleges and incorporates the allegations set forth in paragraphs 1 through 80 as though fully set forth therein.

82.     The Rogue Fitness Logo is entitled to protection under Ohio Revised Code § 1329 as evidenced by Rogue's '862 Registration, '863 Registration, '864 Registration, '865 Registration, '866 Registration, and '894 Registration.

83.     Titan's use of the Rogue Fitness Logo and/or colorable imitations thereof without Rogue's consent is likely to cause confusion or mistake or deception as to the source of origin of Titan's goods.

84.     Titan's activities constitute trademark infringement within the meaning of Ohio Revised Code § 1329.65 and Ohio common law.

85.     Titan's acts of infringement are and have been deliberate, intentional, and willful and have been committed with full knowledge of Rogue's rights in its Rogue Fitness Logo.

28

Titan's bad faith is evidenced by at least Titan's ongoing and expanding campaign to copy Rogue and confuse consumers.

86.    Titan has profited because of its infringements in an amount to be determined at trial.

87.    Titan's unlawful acts of infringement have caused and will continue to cause substantial and irreparable harm to Rogue and to the public for which there is no adequate remedy at law. Titan has unjustifiably benefited from its unlawful acts and will continue to infringe unless enjoined by this Court.

88.    Rogue is entitled to injunctive relief, and Rogue is also entitled to recover Titan's profits under at least Ohio Revised Code § 1329.66.

## COUNT V:  Deceptive Trade Practices in Violation of Ohio Rev. Code § 4165.02

89.    Rogue realleges and incorporates the allegations set forth in paragraphs 1 through 88 as though fully set forth therein.

90.    Rogue owns trademark rights in its Rogue Fitness Logo and the Rogue Website Trade Dress, and Titan's acts, as described above, constitute deceptive trade practices in violation of the Ohio Deceptive Trade Practices Act, codified at Ohio Revised Code § 4165.02.

91.    Titan's unlawful use of Rogue's trademark and trade dress and/or colorable imitations thereof, creates a likelihood of confusion among consumers with respect to at least the source, sponsorship, or approval of the parties' goods or services or as to the affiliation, connection, or association between the parties and/or the parties' goods or services.

92.    In the course of operating its website and selling its goods and services online, Titan creates a likelihood of confusion or misunderstanding as to at least the affiliation, connection, and/or association between the parties and/or the parties' goods or services.

13526691v1

93.     Titan's conduct is and has been deliberate, intentional, and willful and has been committed with full knowledge of Rogue's rights. Titan's bad faith is evidenced by at least Titan's ongoing and expanding campaign to copy Rogue, confuse consumers, and erode Rogue's trademark rights.

94.     Rogue has been injured as a result of Titan's unlawful and unauthorized deceptive trade practices by damaging Rogue's goodwill with the public.

95.     As a result of Titan's unlawful and unauthorized deceptive trade practices, Titan has caused and will continue to cause substantial and irreparable harm to Rogue and to the public for which there is no adequate remedy at law. Titan has unjustifiably benefited from its unlawful acts and will continue to do so unless enjoined by this Court.

96.     Rogue is entitled to injunctive relief, and Rogue is also entitled to recover reasonable attorneys' fees under at least Ohio Revised Code § 4165.03.

## COUNT VI:  Common Law Trademark Infringement

97.     Rogue realleges and incorporates the allegations set forth in paragraphs 1 through 96 as though fully set forth therein.

98.     Titan's activities, in particular Titan's use of the Rogue Fitness Logo and/or colorable imitations thereof, in commerce, on its website and products, in direct competition with Rogue, constitute common law trademark infringement, at least because Titan's use of Rogue's trademark and/or colorable imitations thereof is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of products bearing infringing marks by creating the false and misleading impression that products bearing infringing marks are manufactured by, authorized by, or otherwise associated with Rogue, or that the parties are otherwise connected, associated, and/or affiliated.

30

99.    Rogue's trademark is entitled to protection under the common law. Rogue has extensively and continuously promoted and used its trademark in the United States and in Ohio. Through that extensive and continuous use, Rogue's trademark has become a well-known indicator of the origin and quality of Rogue's products and services. Rogue's trademark has also acquired substantial secondary meaning in the marketplace, including in and across Ohio, in geographic areas of Ohio such as the Columbus area, and to relevant groups of consumers and potential customers, *e.g.* individuals who purchase and/or are likely to purchase strength and fitness equipment. Moreover, Rogue's trademark acquired secondary meaning before Titan started infringing Rogue's trademark.

100.    Titan's use of Rogue's trademark and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Rogue for which Rogue has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Rogue's trademark, Rogue's products and services, and Rogue.

101.    On information and belief, Titan's use of Rogue's trademark and/or colorable imitations thereof has been intentional, willful, and malicious. Titan's bad faith is evidenced at least by Titan's ongoing and expanding campaign to copy Rogue, confuse consumers, and erode Rogue's trademark rights.

102.    Rogue is entitled to injunctive relief, and Rogue is also entitled to recover at least Titan's profits, costs, reasonable attorneys' fees, and punitive damages as permitted by Ohio law.

## COUNT VII:  Common Law Trade Dress Infringement

103.    Rogue realleges and incorporates the allegations set forth in paragraphs 1 through 102 as though fully set forth therein.

13526691v1

104.    Titan's activities, in particular Titan's use of the Rogue Website Trade Dress and/or colorable imitations thereof, in commerce, on its website and products, in direct competition with Rogue, constitute common law trade dress infringement, at least because Titan's use of Rogue's trade dress and/or colorable imitations thereof is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the products promoted using the infringing mark by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with Rogue, or that the parties are otherwise connected, associated, and/or affiliated.

105.    Rogue's trade dress is entitled to protection under the common law. Rogue's trade dress includes unique, distinctive, and non-functional subject matter that consumers have come to associate as source identifiers of Rogue. Rogue has extensively and continuously promoted and used its trade dress in the United States and in Ohio. Through that extensive and continuous use, Rogue's trade dress has become a well-known indicator of the origin and quality of Rogue's products and services. Rogue's trade dress has also acquired substantial secondary meaning in the marketplace, including in and across Ohio, in geographic areas of Ohio such as the Columbus area, and to relevant groups of consumers and potential customers, *e.g.* individuals who purchase and/or are likely to purchase strength and fitness equipment. Moreover, Rogue's trade dress acquired secondary meaning before Titan started infringing Rogue's trade dress.

106.    Titan's use of Rogue's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Rogue for which Rogue has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Rogue's trade dress, Rogue's products and services, and Rogue.

32

107.     On information and belief, Titan's use of Rogue's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Titan's bad faith is evidenced at least by Titan's ongoing and expanding campaign to copy Rogue, confuse consumers, and erode Rogue's valuable trade dress rights.

108.     Rogue is entitled to injunctive relief, and Rogue is also entitled to recover at least Titan's profits, costs, reasonable attorneys' fees, and punitive damages as permitted by Ohio law.

## COUNT VIII:  Common Law Trademark Dilution

109.     Rogue realleges and incorporates the allegations set forth in paragraphs 1 through 108 as though fully set forth herein.

110.     Based on the activities described above, including for example, Titan's use of the Rogue Fitness Logo and/or a very similar colorable imitation thereof that, *inter alia*, carefully and intentionally copied particular characteristics of Rogue's logo such as use of an identical font and identical color scheme, Titan is likely to dilute, has diluted, and continues to dilute Rogue's Rogue Fitness Logo in violation of Ohio common law. Titan's use of Rogue's Rogue Fitness Logo and/or a colorable imitation thereof is likely to cause, and has caused dilution of Rogue's distinctive Rogue Fitness Logo. The Rogue Fitness Logo is a strong and famous mark in and across Ohio, particularly in the Columbus area, among athletes, fitness enthusiasts, and to Rogue's considerable customer base. Titan's activity is likely to cause, and has caused dilution of Rogue's distinctive, strong, and famous Rogue Fitness Logo, at least by eroding and/or blurring the public's exclusive identification of Rogue's famous trademark with Rogue and Rogue's products and services, by lessening the capacity and/or causing a gradual diminution of Rogue's famous trademark to identify and distinguish Rogue's products and services, by

associating Rogue's trademarks with products of inferior quality and shoddy foreign workmanship, and by impairing the distinctiveness of Rogue's famous trademark.

111.    The Rogue Fitness Logo is famous and entitled to protection under Ohio common law. The Rogue Fitness Logo is inherently distinctive, is covered by several Ohio state trademark registrations, and has acquired distinctiveness through Rogue's extensive and continuous promotion and use of the Rogue Fitness Logo in Ohio and to Ohio consumers. Through that inherent distinctiveness and extensive and continuous use, the Rogue Fitness Logo has become a famous well-known indicator of the origin and quality of Rogue's products in Ohio, as well as in geographic areas of Ohio such as the Columbus area, and to relevant groups of consumers and potential customers, *e.g.* individuals who purchase and/or are likely to purchase strength and fitness equipment, home gym equipment, and/or CrossFit® equipment, and/or individuals that participate in high-intensity fitness and athletic activity, such as weightlifting or CrossFit®. The Rogue Fitness Logo is widely recognized by the consuming public in Ohio as a designation of the source of Rogue and Rogue's products, including recognition in particular geographic areas and customer segments as described herein. The Rogue Fitness Logo has also acquired substantial secondary meaning in the marketplace in Ohio, and further in sub-markets of Ohio such as the Columbus area, and/or with individuals that follow and/or participate in fitness activities. Moreover, the Rogue Fitness Logo became famous in Ohio and acquired secondary meaning in Ohio before Titan's infringing use of the Rogue Fitness Logo

112.    Titan's use of the Rogue Fitness Logo and/or a colorable imitation thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Rogue for which Rogue has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill, positive associations, and reputation for quality associated with the Rogue

34

Fitness Logo, Rogue's products, and Rogue, as well as diminution in the Rogue Fitness Logo's distinctiveness, effectiveness, and value.

113.    On information and belief, Titan's use of Rogue's trademark and/or colorable imitations thereof has been intentional, willful, and malicious. Titan's bad faith is evidenced at least by Titan's ongoing and expanding campaign to copy Rogue in many different ways, by Titan's apparent business practices of copying successful companies in the marketplace, by Titan's unlawful use of Rogue's trademarks and/or confusingly similar imitations thereof, and by Titan's continuing disregard for Rogue's rights.

114.    Rogue is entitled to injunctive relief, and Rogue is entitled to recover at least Titan's profits, costs, reasonable attorneys' fees, and punitive damages as permitted by Ohio law.

## COUNT IX:  Common Law Unfair Competition

115.    Rogue realleges and incorporates the allegations set forth in paragraphs 1 through 114 as though fully set forth therein.

116.    Titan's advertisements, promotions, offers to sell, sales, and/or distribution of products using marks, terms, or designs that infringe the Rogue Fitness Logo and the Rogue Website Trade Dress, and/or other infringing uses, in direct competition with Rogue, violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and constitute common law unfair competition, at least because Titan has obtained an unfair advantage as compared to Rogue through Titan's use of the Rogue Fitness Logo, the Rogue Website Trade Dress, and/or colorable imitations thereof. Titan's advertisements, promotions, offers to sell, sales, and/or distribution of products bearing infringing marks, in direct competition with Rogue and in an intentional and calculated manner, are likely to cause consumer confusion as to origin and/or sponsorship/affiliation of products bearing infringing marks, at least by creating the false and misleading impression that the

infringing products are manufactured by, authorized by, or otherwise associated with Rogue. Titan has also interfered with Rogue's business.

117.    Rogue's trademark and trade dress are entitled to protection under the common law. Rogue's trade dress includes unique, distinctive, and non-functional design features. Rogue has extensively and continuously promoted and used Rogue's trademark and trade dress for years in the United States and Ohio. Through that extensive and continuous use, Rogue's trademark and trade dress have become well-known indicators of the origin and quality of Rogue's products and services. Rogue's trademark and trade dress have also acquired substantial secondary meaning in the marketplace, including in and across Ohio, in geographic areas of Ohio such as the Columbus area, and to relevant groups of consumers and potential customers, *e.g.* individuals who purchase and/or are likely to purchase strength and fitness equipment, home gym equipment, and/or CrossFit® equipment, and/or individuals that participate in high-intensity fitness and athletic activity, such as weightlifting or CrossFit®. Moreover, Rogue's trademark and trade dress acquired this secondary meaning before Titan started infringing Rogue's trademark and trade dress.

118.    Titan's use of Rogue's trademark, trade dress, and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Rogue for which Rogue has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Rogue's trademark, Rogue's trade dress, Rogue's products and services, and Rogue.

119.    On information and belief, Titan's use of Rogue's trademark, Rogue's trade dress, and/or colorable imitations thereof has been intentional, willful, and malicious. Titan's bad faith is evidenced at least by Titan's ongoing and expanding campaign to copy Rogue in many

36

different ways, by Titan's apparent business practices of copying successful companies in the marketplace, by Titan's unlawful use of Rogue's trademarks and trade dresses and/or confusingly similar imitations thereof, and by Titan's continuing disregard for Rogue's rights.

120.    Rogue is entitled to injunctive relief, and Rogue is also entitled to recover at least Titan's profits, costs, reasonable attorneys' fees, and punitive damages as permitted by Ohio law.

## **Demand for Jury Trial**

121.    Rogue hereby demands a jury trial on all issues so triable.

## **Relief Sought**

WHEREFORE, Plaintiff respectfully prays for:

A.    Judgment that Titan has (i) infringed Rogue's trademark in violation of § 1125(a) of Title 15 in the United States Code; (ii) infringed Rogue's trade dress in violation of § 1125(a) of Title 15 in the United States Code; (iii) engaged in unfair competition and false designation of origin in violation of § 1125(a) of Title 15 in the United States Code; (iv) infringed Rogue's trademark in violation of Ohio Revised Code § 1329.65; (v) engaged in deceptive trade practices in violation of Ohio Revised Code § 4165.02; (vi) violated Rogue's common law rights in Rogue's trademark; (vii) violated Rogue's common law rights in Rogue's trade dress; (viii) diluted Rogue's trademark in violation of Ohio common law; and (ix) engaged in common law unfair competition; and that all of these wrongful activities by Titan were willful;

B.    An injunction against further infringement of Rogue's trademark and trade dress, further dilution of Rogue's trademark, and further acts of unfair competition, false designation of origin, and deceptive trade practices by Titan, and each of its agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, including at least an injunction barring further use of Rogue's trademark and trade dress, or any

37

colorable imitations thereof, and any further selling, offering to sell, distributing, manufacturing, importing, or advertising products bearing any Rogue trademark or trade dress, or colorable imitations thereof, pursuant to at least 15 U.S.C. § 1116, Ohio Revised Code § 4165.03, and Ohio Revised Code § 1329.66;

C.     An Order directing Titan to recall all products bearing any Rogue trademark or trade dress, or colorable imitations thereof, that have been sold and/or distributed, and provide a full refund for all recalled infringing products;

D.     An Order directing the destruction of (i) all infringing products bearing any Rogue trademark or trade dress, or colorable imitations thereof, including all recalled infringing products, (ii) all plates, molds, and other means of making the infringing products in Titan's possession, custody, or control, and (iii) all advertising materials using any Rogue trademark or trade dress, or otherwise related to the infringing products in Titan's possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

E.     An Order directing Titan to publish a public notice providing proper attribution of Rogue's trademark and trade dress to Rogue, and to provide a copy of this notice to all customers, distributors, and/or others from whom the infringing and diluting products are recalled;

F.     An Order barring importation of the infringing products and/or colorable imitations thereof into the United States, and barring entry of the infringing products and/or colorable imitations thereof into any customhouse of the United States, pursuant to at least 15 U.S.C. § 1125(b);

G.     An award of monetary relief, not on the basis of Rogue's actual damages, but rather in the form of Titan's profits, punitive damages, costs, prejudgment and postjudgment

13526691v1

interest, and reasonable attorneys' fees pursuant to at least 15 U.S.C. § 1117, Ohio Revised Code §§ 1329.66 and 4165.03, and Ohio law; and

H.     Such other and further relief, both legal and equitable, as this Court deems just and proper.


Date:  December 31, 2018                    Respectfully submitted,

                                            /s/ Drew H. Campbell
                                            Drew H. Campbell (0047197)
                                            *Trial Attorney*
                                            BRICKER & ECKLER LLP
                                            100 South Third Street
                                            Columbus, Ohio 43215-4291
                                            Telephone: (614) 227-2300
                                            Facsimile: (614) 227-2390
                                            dcampbell@bricker.com

                                            Trial Counsel for Plaintiff Coulter Ventures, LLC

                                            Of Counsel:

                                            Louis DiSanto (*pro hac vice forthcoming*)
                                            Illinois Bar No. 6286044
                                            ldisanto@bannerwitcoff.com
                                            Erik S. Maurer (*pro hac vice forthcoming*)
                                            Illinois Bar No. 6275467
                                            emaurer@bannerwitcoff.com
                                            Eric J. Hamp (*pro hac vice forthcoming*)
                                            Illinois Bar No. 6306101
                                            ehamp@bannerwitcoff.com
                                            Anthony J. Denis (*pro hac vice forthcoming*)
                                            Illinois Bar No. 6329599
                                            adenis@bannerwitcoff.com

                                            Banner & Witcoff, Ltd.
                                            71 South Wacker Drive
                                            Suite 3600
                                            Chicago, IL  60606-7407
                                            Telephone: (312) 463-5000
                                            Facsimile:  (312) 463-5001
                                            *Counsel for Plaintiff,*
                                            *Coulter Ventures, LLC*